**CINEMA BLUE OF CHARLOTTE, INC., Jim St. John, and Curtis Rene Peterson, Plaintiffs,**

v.

**Peter S. GILCHRIST, III, District Attorney of the Twenty–Sixth Prosecutorial District, in his official capacity, Defendant.**

**No. C–C–88–557–M.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 13, 1989.

---

Nelson M. Casstevens, Jr., Charlotte, N.C., Lee J. Klein, Durand, Mich., George Daly, Calvin Murphy, Charlotte, N.C., for plaintiffs.

Harold M. White, Jr., N.C. Dept. of Justice, Raleigh, N.C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

On December 23, 1988, plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging that defendant has deprived them of their rights under the First, Sixth and Fourteenth Amendments. In the complaint, plaintiffs seek declaratory relief and have moved that, pending final trial and determination, the court preliminarily enjoin defendant. Plaintiffs' motion for preliminary injunction was heard on January 10, 1989.

### FINDINGS OF FACT

1. Plaintiff Cinema Blue of Charlotte, Inc. ("Cinema Blue"), is a corporation organized under the laws of North Carolina, and has the capacity to sue in its own name. Plaintiffs Jim St. John ("St. John") and Curtis Rene Peterson ("Peterson") are citizens and residents of Michigan.

2. Defendant Peter S. Gilchrist, III ("Gilchrist"), is the duly elected District Attorney for the Twenty–Sixth Prosecutorial District, State of North Carolina, and is being sued in his official capacity. The

Twenty–Sixth Prosecutorial District is comprised of Mecklenburg County, North Carolina. Defendant is "responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district." N.C. CONST. art. IV, § 18.

3. Plaintiffs have been charged with multiple counts of disseminating obscenity, a felony under N.C.Gen.Stat. § 14–190.1 (1986), and with conspiring to disseminate obscenity. Plaintiffs are scheduled to be tried on these charges in the Superior Court of Mecklenburg County, North Carolina, beginning on February 13, 1989.

4. Under North Carolina law, material is obscene if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary community standards relating to the depiction or description of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, or scientific value. . . .

N.C.Gen.Stat. § 14–190.1(b)(1–3).

5. Plaintiffs wish to defend against the obscenity charges at their trial in state court by offering expert testimony that the videotapes and magazines at issue are not obscene. Plaintiffs have engaged Dr. Joseph E. Scott, Associate Professor of Sociology at Ohio State University, as one of their experts in the state court criminal cases.

6. Dr. Scott proposes to develop testimony on whether the materials at issue are obscene, as defined in N.C.Gen.Stat. § 14–190.1(b), by presenting some or all of the materials to "focus groups," randomly selected groups of Mecklenburg County adults, for two main purposes. First, Dr. Scott will assess the attitudes of the focus group members toward the materials and then extrapolate from those findings, using sociological and statistical techniques, to a conclusion as to whether the materials are within the statutory definition of obscenity.

Second, Dr. Scott proposes to use the focus groups to validate certain language which specifically describes the nature and content of the sexual activities in the materials at issue. This language then will be used in conducting telephone surveys of community attitudes toward the materials.

7. On December 5, 1988, the Honorable Marvin K. Gray, Superior Court Judge, heard all pending motions in the state criminal prosecutions. On the morning of December 5, plaintiffs told defendant Gilchrist of their plans to develop expert testimony by exhibiting the materials at issue to focus groups conducted by Dr. Scott. Defendant Gilchrist told plaintiffs' counsel that exhibition of the materials at issue by plaintiffs' expert to focus groups in Mecklenburg County would be illegal. Gilchrist refused to agree to the entry of a court order allowing plaintiffs' expert to display the materials to members of the public. Gilchrist also refused to agree not to prosecute plaintiffs' expert.

8. During argument on the pending motions, plaintiffs moved orally that the Superior Court enter a protective order enjoining prosecution of Dr. Scott for dissemination of obscenity if he exhibited the materials to focus groups. In response to the oral motion, defendant Gilchrist confirmed to the court that, in his opinion, dissemination of the materials at issue in the criminal prosecutions to the public by plaintiffs' expert would be illegal. The court denied the motion for protective order from the bench. On December 20, 1988, plaintiffs, by leave of the Superior Court, filed the motion for protective order in written form. The Superior Court denied the motion in an order filed December 30, 1988.

9. At the January 10 hearing in this court, defendant Gilchrist testified that he still believes that exhibition of the materials by plaintiffs' expert in preparation of their defense is illegal. Defendant conceded that plaintiffs' apprehensions of prosecution are reasonable.

10. There are twelve different magazines and motion pictures at issue in the state criminal prosecutions. In the com-

plaint plaintiffs alleged that none of the materials at issue in the state criminal prosecutions had been judged obscene in the pending prosecutions "or in any other action of which Plaintiffs are advised." Defendant introduced evidence that five of the materials in the pending prosecutions have been judged obscene in two related prosecutions. Plaintiffs concede that defendant is correct and have limited their request for preliminary relief and declaratory relief to the remaining seven materials.

11. Dr. Scott has refused to proceed with the development of expert testimony, if he will be subject to prosecution by defendant.

12. The Concerned Charlotteans are a group founded in early 1984 to address to the pornography issue and other moral issues which affect the Charlotte community. The group has engaged in political and religious opposition to pornography. The group has attempted to educate the public about what materials are being disseminated in the community. In 1985, the group held an exhibition at First Baptist Church in Charlotte. Joseph R. Chambers, President of the Concerned Charlotteans, testified in this court that "sexually explicit" material was displayed at the exhibition; however, he could not recall clearly the nature and extent of the sexual conduct depicted in the materials. Robert F. Thomas, an attorney with the Charlotte Police Department, attended the exhibition and viewed some of the materials, none of which he judged to be obscene. Defendant Gilchrist was aware that the exhibition was held, but took no steps to investigate or prosecute.

13. In March, 1984, or March, 1985, the University of North Carolina at Charlotte Department of Criminal Justice, the Charlotte Police Department and the Federal Bureau of Investigation sponsored a workshop on the interrelationship of the problems of missing children, child pornography and serial murders. Sexually explicit material, which included deviant homosexual acts with children, was displayed at the workshop. Although not generally publi-

cized, the exhibition was essentially open to the public. Law enforcement officials in the Charlotte area, UNCC students and the press specifically were invited to the workshop. The defendant's office may have received an invitation. This is the only evidence presently on the record that defendant had knowledge of the workshop. The defendant took no action to investigate or prosecute the sponsors of the workshop.

## CONCLUSIONS OF LAW

■ The court first must decide whether it may issue any ruling in this action. Defendant argues that the court should abstain; that is, "dismiss or postpone decision of a controversy clearly within its jurisdiction, in deference to a possible decision by a state court." McMillan, "Abstention—The Judiciary's Self–Inflicted Wound," 56 N.C.L.Rev. 527 (1978). The court's initial reaction to the complaint was to abstain. However, in this case, abstention is not appropriate. Plaintiffs are not asking the court to enjoin prosecution of the obscenity charges against them scheduled for trial commencing February 13, 1989. If asked, the court would abstain from enjoining those pending state court criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Instead, plaintiffs are asking the court to enjoin the *threatened prosecution of their expert if he aids them in their defense against those charges.* The court may properly enjoin threatened criminal prosecutions. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975). Thus, the court will not abstain.

In *Doran,* the Supreme Court restated the traditional standard for granting a preliminary injunction.

The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits. It is recognized, however, that a district court must weigh carefully the interests on both sides.

422 U.S. at 931, 95 S.Ct. at 2568. The Fourth Circuit has elaborated on the tradi-

tional standard for issuing preliminary injunctions and the need for balancing the interests of the parties. *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189 (4th Cir.1977).

■ The correct trial court standard in the Fourth Circuit for interlocutory injunctive relief is the balance-of-hardship test. *Blackwelder*, 550 F.2d at 194, 196. "The balance-of-hardship test correctly emphasizes that, where *serious* issues are before the court, it is a sound idea to maintain the *status quo ante litem* provided that it can be done without imposing too excessive an interim burden upon the defendant...." *Blackwelder*, 550 F.2d at 194–95 (citations omitted) (emphasis in original). The decision to grant or deny a preliminary injunction depends on the "flexible interplay" of four factors: (1) probable irreparable injury to plaintiff without a decree; (2) likely harm to defendant with a decree; (3) likelihood of success on the merits; and (4) the public interest. *Blackwelder*, 550 F.2d at 196. In applying the balance-of-hardship test,

> the first step in a Rule 65(a) situation is for the court to balance the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant; and if a decided imbalance of hardship should appear in plaintiff's favor ... 'it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.'

*Blackwelder*, 550 F.2d at 195 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir.1953)).

"[T]he requirement of irreparable harm must also be evaluated within the basic context of the balance-of-hardship test." *Blackwelder*, 550 F.2d at 196. The *Blackwelder* court emphasized that irreparable injury is a question of relative harm to the plaintiff.

> [W]hile 'irreparability' may suggest some minimum of probable injury which is required to get the court's attention, the

more important question is the *relative* quantum and quality of plaintiff's harm. The decision to grant preliminary relief cannot be intelligently made unless the trial court knows how much the precaution will cost the defendant. If it costs very little, the trial court should be more apt to decide that the threatened injury is 'irreparable' for purposes of interlocutory relief.

*Id.* (emphasis in original).

The interplay of irreparable harm and likelihood of success also is a continuum. "The importance of probability of success increases as the probability of irreparable injury diminishes ... and where the latter may be characterized as simply 'possible,' the former can be decisive." *Blackwelder*, 550 F.2d at 195. The probability of success begins to assume real significance when the balance of hardship stands at equipoise. *Blackwelder*, 550 F.2d at 195 n. 3.

■ In the absence of the preliminary injunction sought, plaintiffs likely will suffer irreparable injury. Without the injunction, plaintiffs will stand trial in state court without being able to offer expert testimony in their defense. If plaintiffs are convicted, the North Carolina appellate courts or the federal courts in a *habeas corpus* proceeding could conclude that the threatened prosecution of plaintiffs' expert was unconstitutional and order a new trial. However, such relief probably would not be awarded until long after conviction. With each passing day, measurement of the "contemporary community standards" which existed during the period February, 1988, to June, 1988, when plaintiffs disseminated the materials at issue, becomes more difficult. Community standards about what is obscene change over time. A delay of one or many more years in attempting to measure those standards as they existed in the relevant time period may well make measurement impossible.

Issuance of a preliminary injunction will impair the State's interest in enforcing its criminal laws. However, if this court were to enter final judgment that the threatened prosecution of Dr. Scott is constitutional, defendant Gilchrist would have suffered no

more than a temporary delay in prosecuting him. Also, the State will not be prevented by a preliminary injunction from prosecuting persons other than Dr. Scott for disseminating obscenity.

■ The court concludes that the balance of harm tilts in plaintiffs' favor. Therefore, the remaining question is whether plaintiffs have raised serious questions which are fair ground for litigation. The court will address each of plaintiffs' theories of relief below.

■ Plaintiffs allege that the threatened prosecution of Dr. Scott deprives them of their right under the Sixth Amendment and the due process clause of the Fourteenth Amendment to offer testimony in their state court criminal trial. The Supreme Court has described what it regards as the most basic ingredients of due process of law:

A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507–508, 92 L.Ed. 682 (1948). The right of criminal defendants to offer testimony of witnesses is also guaranteed by the Sixth Amendment, as incorporated in the due process clause of the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to

establish a defense. This right is a fundamental element of due process of law. *Id.*

The Supreme Court held in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), that obscenity is not protected speech under the First Amendment. In an early obscenity case after *Roth*, Mr. Justice Frankfurter discussed the "right of one charged with obscenity ... to enlighten the judgment of the tribunal ... and to do so through qualified experts," *Smith v. California*, 361 U.S. 147, 164–65, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring); he concluded that the right to introduce expert testimony is a requirement of due process in obscenity prosecutions. *Id.* at 167, 80 S.Ct. at 226.

■ Citing Mr. Justice Frankfurter's concurring opinion in *Smith*, the Supreme Court has held that "[t]he defense should be free to introduce appropriate expert testimony" in obscenity prosecutions. *Kaplan v. California*, 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492 (1973). The North Carolina Supreme Court has recognized the *Kaplan* holding. *State v. Anderson*, 322 N.C. 22, 27–28, 366 S.E.2d 459, *cert. denied*, —— U.S. ——, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988). Since defendant's threatened prosecution of Dr. Scott directly inhibits plaintiffs' right to develop appropriate expert testimony, the court concludes that plaintiffs have not only raised a serious constitutional question but have made a strong showing of probability of success on the merits at trial.

■ Plaintiffs, citing *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), also assert that defendant has violated the equal protection clause of the Fourteenth Amendment by threatening to enforce the North Carolina obscenity statute in a discriminatory fashion. In *Yick Wo*, the Supreme Court held:

Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between per-

sons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

*Yick Wo*, 118 U.S. at 373–74, 6 S.Ct. at 1073.

By implication, *Yick Wo* makes prosecutorial discrimination unconstitutional if it is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Defendant has failed to prosecute a citizens' group, a local educational institution, and law enforcement agencies, who may have disseminated obscene material in an effort to educate the public, while threatening to prosecute persons who exhibit allegedly obscene material in order to "enlighten the judgment of the tribunal" in an obscenity prosecution. This is an unjustifiable standard for the exercise of prosecutorial discretion, if plaintiffs supplement their showing at trial that this discrimination is deliberate. Thus, plaintiffs have raised a serious constitutional question which is fair ground for litigation.

Finally, plaintiffs allege in the complaint that defendant's threatened prosecution deprives them of their First Amendment right to freedom of speech. Plaintiffs failed to address this claim in their brief in support of the motion for preliminary injunction and at the hearing; therefore, the court does not decide that issue.

The court concludes that plaintiffs' motion for a preliminary injunction should be granted. Defendant, by his threat of prosecution, in essence has usurped the role of the trial judge in determining what evidence may be presented to the jury. This court does not hold that plaintiffs' expert testimony must be admitted in the upcoming state criminal trial. Admissibility of evidence in plaintiffs' criminal trial remains in the sound discretion of the Superior Court. However, this court today affirms that, pending final determination of this action, plaintiffs should be free to develop appropriate expert testimony, without the threat of prosecution by defendant.

An appropriate order will be entered.

## ORDER

On January 10, 1989, the court heard plaintiffs' motion for preliminary injunction. For the reasons outlined in a separate memorandum of decision, the motion hereby is GRANTED.

IT IS THEREFORE ORDERED that:

1. Defendant Gilchrist, his officers, agents, servants, employees and attorneys, and those in active concert or participation with him who receive actual notice of this order by personal service or otherwise, are ENJOINED, pending entry of final judgment in this action, from arresting or prosecuting plaintiffs, their attorneys, or any other persons who exhibit the materials listed in Exhibit A to adults who consent to view the materials and do view them for the purpose of preparing plaintiffs' defense to felony obscenity charges which are presently scheduled to be tried in the Superior Court of Mecklenburg County, North Carolina, commencing February 13, 1989.

2. Plaintiffs are not required to give security for the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained.

## EXHIBIT A

1. A video taped motion picture entitled *Video Games, Volume X, Cum & Cum Again III.*

2. A video taped motion picture entitled *The Big Switch.*

3. A video taped motion picture entitled *Penetration 2.*

4. A video taped motion picture entitled *Unnatural Phenomenon.*

5. A video taped motion picture entitled *How To Get A'head'.*

6. A video taped motion picture entitled *Cum Shot Revue, Volume Four.*

7. A magazine entitled *Pregnant & Sexy!*