**CINEMA BLUE OF CHARLOTTE, IN-CORPORATED; Jim St. John; Curtis Rene Peterson, Plaintiffs–Appellees,**

v.

**Peter S. GILCHRIST, III, Defendant–Appellant.**

**No. 89–1415.**

United States Court of Appeals, Fourth Circuit.

Argued April 13, 1989.

Decided Oct. 5, 1989.

Rehearing and Rehearing In Banc Denied Oct. 30, 1989.

Harold Mitchell White, Jr., Sp. Deputy Atty. Gen. (Lacy H. Thornburg, Atty. Gen., Pittsboro, N.C., Jean A. Benoy, Isham B. Hudson, Sr. Deputy Attys. Gen. and David Roy Blackwell, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief) for defendant-appellant.

Lee J. Klein, Okemos, Mich. (George Daly, Nelson M. Casstevens, Jr., and Calvin Murphy, Charlotte, N.C., on brief), for plaintiffs-appellees.

Before PHILLIPS, MURNAGHAN and WILKINS, Circuit Judges.

PHILLIPS, Circuit Judge:

Peter S. Gilchrist, III, District Attorney for the Twenty–Sixth Prosecutorial District of the State of North Carolina, appeals a district court order awarding preliminary injunctive relief to the plaintiffs, Cinema Blue of Charlotte, Inc., Jim St. John and Curtis Rene Peterson (collectively, "Cinema Blue"), in this action under 42 U.S.C. § 1983. The challenged injunction prohibited "Gilchrist, his officers, agents, servants, employees and attorneys, and those in active concert or participation with him ... from arresting or prosecuting plaintiffs, their attorneys, or any other persons" who might exhibit certain allegedly obscene materials "to adults who consent to view the materials and do view them for the purpose of preparing plaintiffs' defense to felony obscenity charges" which were then "scheduled to be tried on indictments against Cinema Blue in the Superior Court of Mecklenburg County, North Carolina, commencing February 13, 1989." *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 704 F.Supp. 631, 632 (W.D.N.C.1989).

Because we think that the district court should have abstained from interfering with a pending state proceeding, we vacate its injunction and remand the case for entry of an order dismissing the plaintiffs' claims for injunctive and declaratory relief.

I

The relevant facts are not in dispute. At the time the district court issued the challenged injunction, the appellees were under indictment on multiple charges that they had disseminated various purportedly "obscene" materials, in violation of N.C.G.S. § 14–190.1. The criminal case had not yet gone to trial and the parties were still in the midst of pretrial proceedings. Cinema Blue had already made clear, however, that it would defend the felony charges by, *inter alia,* presenting expert testimony that the materials described in the indictment were not "obscene" within the meaning of the statute.

The parties' dispute is essentially one over the way in which the appellees intended to lay the foundation for the expert's testimony. Under applicable provisions of the state statute, sexually explicit material constitutes "obscenity" if it is "patently offensive," "appeals to the prurient interest in sex" as judged by "contemporary community standards," and "lacks serious literary, artistic, political, or scientific value." *Id.* §§ 14–190.1(b)(1)–(3). On the premise that it would become critical at trial to adduce proof of "community attitudes," therefore, Cinema Blue engaged Dr. Joseph E. Scott, Associate Professor of Sociology at the Ohio State University, as one of their experts. What we are now told is that Professor Scott intended to

> develop [his] testimony on whether the materials at issue are obscene, as defined in N.C.[G.S.] § 14–190.1(b), by presenting some or all of the materials to "focus groups" [—] randomly selected groups of Mecklenburg County adults [—] for two main purposes. First, Dr. Scott will assess the attitudes of the focus group members toward the materials and then extrapolate from those findings, using sociological and statistical techniques, to a conclusion as to whether the materials are within the statutory definition of obscenity. Second, Dr. Scott proposes to use the focus groups to validate certain language which specifically describes the nature and content of the sexual activities in the materials at issue. This language then will be used in conducting telephone surveys of community attitudes toward the materials.

Joint Appendix at 79.

On December 5, 1988, shortly before a scheduled hearing on various motions pending in connection with the criminal prosecution, counsel for Cinema Blue informed Gilchrist of the particulars of Dr. Scott's "focus group" proposal. Gilchrist immediately expressed concern that the proposed focus group exhibition would itself constitute a violation of the state obscenity statute. Cinema Blue therefore raised the matter at the motions hearing and asked the state court to enter a protective order enjoining

any prospective prosecution of Dr. Scott if he indeed exhibited the materials for the purpose of developing his expert testimony. In response to inquiries from the court, Gilchrist again opined that any such exhibitions would be illegal, and that the state would be entitled to prosecute Scott if he proceeded as planned. Ruling from the bench, the state court in turn denied Cinema Blue's motion for a protective order.[1]

On December 22, 1988, the appellees filed the present action under 42 U.S.C. § 1983, seeking both injunctive and declaratory relief. They claimed that, in light of Gilchrist's implied threat to prosecute, Dr. Scott had declined to proceed with his focus group study. As a result, Cinema Blue assertedly could not prepare an adequate defense against the state prosecution. Gilchrist's threats of prosecution—together of course with the state court's refusal to grant the requested protective order—therefore effected an actionable deprivation of the appellees' rights under the Sixth and Fourteenth Amendments to present witnesses on their behalf.

Plaintiffs also claimed that Gilchrist had previously *declined* to prosecute various anti-pornography groups and educational institutions that had exhibited the materials at issue in the pending state court proceedings against Cinema Blue. Any action ultimately taken against Dr. Scott would therefore constitute an "arbitrary" and "discriminatory" exercise of prosecutorial discretion, hence a *per se* violation of the equal protection clause of the Fourteenth Amendment.

On January 10, 1989, the district court conducted a hearing on Cinema Blue's motion for a preliminary injunction against the threatened prosecution of Dr. Scott or "any other persons who exhibit the materials [at issue in the state prosecution] ... for the purpose of preparing [Cinema Blue's] defense." Gilchrist conceded at the hearing that the state court had made clear its unwillingness to grant the requested relief, and that Dr. Scott indeed risked

prosecution if he conducted the proposed focus group study.

Three days later, the district court issued an order granting Cinema Blue's motion for preliminary injunctive relief. In an accompanying opinion, the court held that " '[t]he defense should be free to introduce appropriate expert testimony' in obscenity prosecutions." *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 704 F.Supp. 631, 636 (W.D.N.C.1989) (hereinafter *Cinema Blue* ) (quoting *Kaplan v. California,* 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492 (1973)). Here, Gilchrist's "threatened prosecution of Dr. Scott directly inhibit[ed] plaintiffs' right to develop appropriate expert testimony," and therefore deprived Cinema Blue of its Sixth Amendment right to present an adequate defense. *Id.,* 704 F.Supp. at 636. The court found, moreover, that Gilchrist

> ha[d] failed to prosecute a citizens' group, a local educational institution, and law enforcement agencies, who may have disseminated obscene material in an effort to educate the public, while threatening to prosecute persons who exhibit allegedly obscene material in order to "enlighten the judgment of the tribunal" in an obscenity prosecution. This is an unjustifiable standard for the exercise of prosecutorial discretion....

*Id.,* at 637 (quoting *Smith v. California,* 361 U.S. 147, 164–65, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring)).

In the district court's view, plaintiffs had therefore "raised questions going to the merits" of their claim for declaratory relief that were "so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.,* 550 F.2d 189, 195 (4th Cir.1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953)). Also present here was a substantial likelihood that, "[i]n the absence of the preliminary

---

1. On December 20, 1988, Cinema Blue renewed its motion for a protective order and filed various papers apparently meant to preserve a

record of the state court's earlier bench ruling. The state court denied the renewed motion in a written order dated December 30, 1988.

injunction sought, plaintiffs [would] suffer irreparable injury," inasmuch as "[w]ith each passing day, measurement of the 'contemporary community standards' which existed ... when plaintiffs disseminated the materials at issue[ ] becomes more difficult." *Cinema Blue*, 704 F.Supp. at 635. Cinema Blue was therefore entitled to injunctive relief, *See Blackwelder*, 550 F.2d at 195–96, in the form of an order prohibiting Gilchrist or his "agents" from prosecuting Dr. Scott or others who exhibited the allegedly obscene materials solely for the purpose of preparing the federal plaintiffs' defense.

On January 30, 1989, the district court denied Gilchrist's motion for a stay of the preliminary injunction, this appeal followed, we expedited it, and on February 9, 1989, we stayed the district court's injunction pending the appeal.[2]

## II

This action sought to raise difficult and important questions respecting the nature and quality of a defendant's right under the Sixth Amendment to present an adequate defense; the limitations on "prosecutorial discretion" impliedly embodied in the equal protection clause of the Fourteenth Amendment; and the circumstances in which the threat of "irreparable harm" associated with grievable state action is so great that a court of equity should grant preliminary injunctive relief. We need not—and indeed may not—reach those questions, however, having concluded that, in the unique circumstances present here, the district court should have abstained from decision of the case and dismissed the plaintiffs' action.

■ In our view, this case invokes the principle counselling abstention that was announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Giving force to the "longstanding public policy against [equitable] interference with state court proceedings," *id.* at 43, 91 S.Ct. at 750, *Younger* held that federal courts may not enjoin a pending state criminal prosecution, absent a clear showing that "defense of the ... prosecution will not assure adequate vindication of constitutional rights." *Id.* at 48–49, 91 S.Ct. at 753 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965)). What lies behind *Younger*, of course, is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, "whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984). *Younger* thus implements the broader notion that ours "is a system in which there is sensitivity to the

---

**2.** Events that occurred during the pendency of this appeal have raised mootness issues sufficiently worrisome that we have considered them *sua sponte*. From various filings with this court it appears that before we issued our February 9, 1989, stay of the district court's preliminary injunction, hence while its protections remained in force, plaintiffs' retained expert witness conducted the controlled showings to "focus groups" of allegedly obscene materials that were said to be required to develop his expert opinion testimony. If that be the case, it is obviously arguable that the federal plaintiffs' constitutional claims of entitlement to the testimony of witnesses in their behalf may have been mooted by procurement of the evidence—inasmuch as their claims at this point could go only to its procurement, not its ultimate admission on trial. *Cf. United States v. (Under Seal), In re Grand Jury Proceedings, John Doe #462,* 757 F.2d 600 (4th Cir.1985) (case mooted by

events during pendency of appeal that made judicial remedy impossible). What may later have happened with any efforts to introduce the evidence in the state court proceeding is not before us, and in any event is irrelevant to the specific federal claim in this action solely concerned with preparing the evidence.

Despite these serious questions, we have nevertheless concluded, as a prudential matter, that the case should not be dismissed as moot, in view of the uncertainties on this appellate record as to the exact circumstances and timing of the arguably mooting events. Obviously, if for any reason any prosecutable conduct occurred outside the unstayed injunction's protection, or if our stay cut short what arguably was further need for the procurement of evidence, the claim was not mooted. We simply are in no position to make a confident judgment on those points.

legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44, 91 S.Ct. at 750.

■ The preliminary injunction challenged here works the sort of practical interference with an ongoing state criminal proceeding that *Younger* counsels against. We recognize, of course, that the district court's order does not by its terms enjoin or otherwise directly interfere with the pending state prosecution. Its direct effect was only to enjoin the future prosecution of persons engaged in the procurement of evidence intended for use in that prosecution. But while in terms the injunction as sought and granted protected only the asserted sixth amendment right of the state defendants in that proceeding to obtain the evidence, necessarily implicit in any such decree must be a judicial perception that the reason its procurement is constitutionally protected is because, more fundamentally, its use is. While we can point to no direct authority on the point, we cannot see how there could be any constitutionally protected right to obtain evidence for use in a pending state proceeding unless its use for that purpose were also thought to be constitutionally protected. Equity is no more properly invoked and exercised for vain, or potentially vain, endeavors in constitutional than other matters, and we cannot conceive that the injunction sought and granted here was granted on any assumption that the constitutional right that protected procurement of the evidence ended once the evidence was in hand. That being so, implicit in the injunctive decree was an apparent anticipatory federal ruling that if offered in the pending state proceeding, this obviously critical evidence enjoyed some measure of constitutional protection. At the very least, its practical effect was to raise the specter of a federal pre-judgment that the evidence enjoyed some measure of federal constitutional protection that must be taken into account by any state court ruling on its admissibility under state rules of evidence. In these circumstances, where the question of the federal plaintiffs' entitlement to "future injunctive ... relief [was] unavoidably ... decided against the backdrop of pending state proceedings," *Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir.1988), the result was an injunctive decree that necessarily embodied "an ongoing federal audit of state criminal proceedings [that] indirectly accomplish[ed] the kind of interference that *Younger v. Harris* ... and related cases sought to prevent." *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974).

It is no barrier to *Younger* abstention here that the injunction in terms protects individuals who are not parties to the pending state prosecution. The express purpose of the injunction was to vindicate the rights of parties, the federal plaintiffs, who were. This case is not therefore like those where an individual who is not a party to ongoing state proceedings has been held entitled, over abstention objections, to federal injunctive relief against future enforcement of state laws. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *District Property Associates v. District of Columbia*, 743 F.2d 21, 28 (D.C.Cir.1984); *Kennecott Corp. v. Smith*, 637 F.2d 181, 185–86 (3d Cir.1980). In the instant case, unlike those where federal injunctive relief is being sought in behalf of persons not parties to ongoing or pending state proceedings, these federal plaintiffs are in a position to raise the constitutional claims that they seek to vindicate in this action by federal injunction as defenses in the pending state proceeding.

Disputing this point, the federal plaintiffs contend that they cannot be assured of adequate vindication of their constitutional rights in the state proceeding and that this makes abstention improper. Such assurance is indeed properly a condition to *Younger* abstention, *see Dombrowski v. Pfister*, 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965), but it is inapplicable here. Cinema Blue's specific contention is that the North Carolina state court in which their prosecution was pending

lacked any "inherent power" to grant the sort of protective order needed to secure their sixth amendment right; that therefore they cannot vindicate that right in the pending state proceeding. No authority under state law is cited to us for this proposition, and we are inclined on general principles to doubt it. But we think it irrelevant in any event whether any such inherent power has to this date been affirmatively recognized and exercised by the North Carolina courts. If there is indeed a sixth amendment right to gather this sort of evidence (and presumably then to use it) in defense of state obscenity prosecutions, any denial of that right, whether at the protective order stage or at the evidentiary stage, is obviously subject to challenge in the state courts by some appropriate device, and any adverse ruling on such a challenge is as obviously subject to preservation for direct constitutional review. In this, as in such matters generally, we indulge the assumption that the state courts are willing and able to vindicate federal constitutional rights. The abstention condition is merely that there be a pending state proceeding in which an opportunity to raise the constitutional challenge will be available to the federal plaintiff. *Suggs v. Brannon,* 804 F.2d 274, 279 (4th Cir.1986). Though we may not be sure exactly what procedural mechanism for doing so will be most appropriate, it is not necessary that we be. It suffices to be confident that it can be raised in some appropriate way, and that we are.

Finally, none of the recognized exceptions to *Younger* abstention is even colorably present here.

There is no claim that any prosecutions of Cinema Blue's expert witnesses would be undertaken in bad faith—that is, "without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975). Cinema Blue's suggestion that any such prosecution undertaken would be "selective," in view of failures of the state to have prosecuted others engaged in similar disseminations of the material in issue is utterly speculative.

Neither could there be any claim by Cinema Blue that federal injunctive relief was required to protect its putative witness against "great and immediate" danger at the state's hands. A federal court may indeed enjoin the threatened state prosecution of one not then a party to ongoing state proceedings, but it need not, and should not do so, "except under extraordinary circumstances," *Fenner v. Boykin,* 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926). This may include a threat of great and immediate harm irremediable except by injunction, *see Younger,* 401 U.S. at 46, 91 S.Ct. at 751, but no such extraordinary circumstances are presented here for Cinema Blue's witness (assuming Cinema Blue had standing to claim federal protection for him in vindication of his own rights). Whether this witness faced any threat of state prosecution was entirely a matter of his own choice. He was not immediately threatened with any irremediable harm, for his remedy for avoiding state prosecution lay entirely within his hands and could be invoked with no sacrifice of any federal rights personal to him.

## III

Because the requested federal injunction threatened significant interference with a pending state proceeding in which the federal plaintiffs would have adequate opportunity to vindicate the constitutional right asserted as a basis for injunctive relief, and because there are no countervailing justifications for such interference, the district court erred by not abstaining from entertaining this action. Accordingly, we reverse and vacate its decree.

SO ORDERED.