**Mary S. Vanderwoude HILL and James J. Hill, Plaintiffs,**

**v.**

**J. Carlton COURTER, III, Commissioner of Agriculture and Consumer Services of the Commonwealth of Virginia, Defendant.**

**No. 1:04CV1039.**

United States District Court, E.D. Virginia, Alexandria Division.

Nov. 8, 2004.

---

Norman Hunter Lamson, Charlottesville, VA, for Plaintiffs.

Peter Robert Messitt, Office of the Attorney General, Richmond, VA, for Defendant.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

Plaintiffs produce goat cheese in their home for sale at a local farmer's market. In this § 1983[1] suit, they seek to enjoin state agricultural inspections of their home goat cheese operation on Fourth Amendment grounds, while simultaneously asserting the same Fourth Amendment grounds as a defense to an ongoing state prosecution based on their refusal to permit such inspections. The threshold question, therefore, is whether *Younger*[2] abstention principles require abstention in favor of the state prosecution.

### I.[3]

Plaintiffs, Mary S. Vanderwoude Hill and James J. Hill ("the Hills"), residents of Fauquier County, Virginia, have owned and lived on Vanderwoude Hill Farm since 1994. The buildings on the farm, including, among others, a feed storage shed, a milking parlor, and the Hills' residence, are set back and not visible from the entrance to the property where the Hills' gravel road meets the state highway and where the Hills have prominently placed "No Trespassing" signs. The Hills' farm-

---

1. 42 U.S.C. § 1983.

2. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

3. The facts recited here are derived from the parties' joint statement of stipulated facts. The few factual disputes that exist are noted, but none are material to the abstention issue.

ing operation is small; they own approximately thirty sheep and chickens, three donkeys, some cows, four to eight female milking goats, two male goats, and about one hundred acres planted in hay.

Since 1997, the Hills have produced hard and soft goat cheese for sale to the public at the local farmers' market. The entire cheese production process takes place on the Hills' farm. It begins in a milking parlor approximately ninety feet from their home, where the Hills milk their goats. They make the cheese in a separate room in the parlor, and then move the hard cheese to a room in their home for aging and storage.[4] To make the soft cheese, the milk is filtered, briefly heated to 185 degrees for pasteurization, mixed with vinegar and permitted to stand while it coagulates and cools. Next, the whey is separated from the milk solids and the cheese is permitted to cool for an additional twenty-four hours before it is wrapped, stamped, prepared for sale, and placed in a freezer in the parlor.

The process for making hard cheese is different. Hard goat cheese is made by adding Mesophyllic to the raw milk to kill undesirable bacteria and Rennet to thicken the milk to a thick pudding. The milk/cheese is then cut into squares and warmed slowly to 102 degrees before it is placed in a press for twenty-four hours to separate the milk from the whey. Next, the cheese is dried for two to three days and then covered in wax and removed to the aging room adjacent to the house to age for at least sixty days before it is taken to market.

The Hills offer their hard and soft goat cheese for sale once a week at the local Fauquier County farmer's market. This market is open every Sunday approximately eight months out of the year and consists of eight participating vendors offering a variety of goods to the public for sale, including fresh vegetables, frozen meat, flowers, wool, jam, baked goods, mushrooms, and goat cheese. The Hills claim they sell between ten and twenty pounds of cheese per week and that their gross annual revenues from their sales of goat cheese averages between $2,500 and $3,500.[5]

In the fall of 1999, the Virginia Department of Agriculture and Consumer Services ("VDACS"), Office of Dairy and Foods, performed an annual survey of farmer's markets throughout Virginia to determine whether any uninspected food products were being sold to the public. In the course of this survey, VDACS learned that the Hills were producing goat cheese on their farm for public consumption. Accordingly, a VDACS agent called the Hills in March 2000 to inform them that their cheese operations were regulated by the Virginia Food Laws and subject to inspection pursuant to Virginia Code § 3.1–399.[6] Nonetheless, the Hills refused to schedule

---

4. The parties dispute whether the room is actually in the residence or merely attached to the house.

5. The government does not concede this fact, although they proffered nothing contradictory.

6. Virginia Code § 3.1–399 provides, in pertinent part, as follows:
 The Commissioner, acting through his duly authorized agents, shall have free access at all reasonable hours to any factory, warehouse, or establishment in which foods are manufactured, processed, packed, or held for introduction into commerce ... for the purpose:
 (1) Of inspecting such factory, warehouse, [or] establishment ... to determine if any of the provisions of [Title 3.1, article 3] are being violated; and
 (2) Of securing samples or specimens of any food after paying or offering to pay for such sample ....

an appointment for the inspection and later turned away inspectors who personally came to inspect the farm. Yet later, when they received a letter notifying them that they had violated Virginia law by refusing to permit the inspection, the Hills relented and, for a time, consented to the inspections. Specifically, in September 2000 and October 2001, the Hills' farm was consensually inspected twice by appointment. The inspections lasted approximately 3.5 hours and included an examination of the milking parlor, the aging room in the Hills' home, and a bathroom adjacent to the aging room.

Thereafter, the Hills withdrew their consent and rebuffed VDACS's efforts to inspect their goat cheese operation. Thus, in late 2002 and again in 2003, VDACS agents unsuccessfully attempted on multiple occasions to inspect the Hills' cheese making operations. Two attempts to schedule an appointment by phone were rebuffed and when agents attempted to conduct two unannounced inspections on different dates in 2003, they were refused entry to the farm. Given these refusals, VDACS pursued a criminal remedy. Specifically, the Commonwealth charged the Hills on August 13, 2003 with refusing to permit entry or inspection of their goat cheese facilities as authorized by Virginia Code § 3.1–399, a misdemeanor under § 3.1–388(e).[7] The Hills were tried jointly in Fauquier County General District Court where, appearing *pro se*, they argued they had a Fourth Amendment right to refuse these warrantless inspections because they required the Hills to submit to a search of their home and the surrounding buildings without a warrant. The court rejected the Hills' Fourth Amendment argument and convicted them, imposing a suspended thirty-day jail sentence, a fine of $250 apiece, and a requirement that they submit to an inspection within twelve months.

The Hills immediately appealed to the Fauquier County Circuit Court where, represented by counsel, they again unsuccessfully raised their Fourth Amendment claim on a motion to dismiss.[8] Following a jury trial on April 8, 2004, the jury returned a guilty verdict and the Hills were fined $100 apiece. Judgment was entered on May 13, 2004 and on September 13, 2004, the Hills mailed a petition for appeal to the Court of Appeals of Virginia.[9] The parties await a response either granting or denying the petition to hear the appeal.

During the pendency of their appeal, the Hills on August 31, 2004 filed this 42 U.S.C. § 1983 suit against J. Carlton Courter, III, the Commissioner of Agriculture and Consumer Services of the Commonwealth of Virginia, in his official capacity, seeking declaratory and injunctive relief on the ground that Virginia Code § 3.1–399 is unconstitutional as applied to them because it authorizes state agents to conduct warrantless searches of their home and farm buildings in violation of

7. Virginia Code § 3.1–388(e), in pertinent part, prohibits "The refusal to permit entry or inspection, or to permit the taking of a sample, as authorized by § 3.1–399."

8. Notably, the Hills are not the first goat cheese farmers to mount a constitutional Fourth Amendment challenge to VDACS inspections of their cheese making facilities. At least one such prior challenge has failed. *See Solem v. Commonwealth*, 2002 WL 31300930, 2002 Va.App. LEXIS 625 (Va.Ct.App.2002) (finding constitutionally reasonable warrantless searches of goat cheese making facilities pursuant to § 3.1–399 because these enterprises were part of a "pervasively regulated industry" and defendants could not shield themselves from inspection by simply producing their commercial product in their home kitchen).

9. *Virginia v. Hill*, Criminal Nos. CR03–485, CR03–486 (Va.Cir.Ct.2004) (Defendant's Notice of Appeal).

the Hills' Fourth Amendment privacy right to be free from unreasonable searches. The Hills argued:

(i) that searches of a home without a warrant are presumptively unreasonable absent consent or exigent circumstances, *see Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.") (citation omitted); *Allinder v. Ohio*, 808 F.2d 1180 (6th Cir.1987) (holding pre-*New York v. Burger*[10] that warrantless search of beekeepers' apiaries did not fall within any legitimate exception to the Fourth Amendment warrant requirement);

(ii) that precedents authorizing warrantless searches of pervasively regulated industries do not apply to a home, *see Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (holding unconstitutional a warrantless and unconsented housing code inspection of plaintiff's residence); *New York v. Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (permitting warrantless searches of commercial premises for pervasively regulated industry but noting "[a]n expectation of privacy in commercial premises … is different from, and indeed less than, a similar expectation in an individual's home.");

(iii) that farm-produced goat cheese sold by farmers to the public is not a pervasively regulated industry; and

(iv) that even if goat cheese production is a pervasively regulated industry,

§ 3.1–399 is too broad to protect privacy interests, *see Rush v. Obledo*, 756 F.2d 713, 721 (9th Cir.1985) (finding law permitting inspection of licensed in-home day care centers overbroad when law permitted inspection at any place, at any time, and without advance notice).

Contemporaneously, the Hills also filed an application for a preliminary injunction to enjoin defendant or his agents from entering the Hills' property pending trial, arguing:

(i) that an additional search of their home or farm buildings would constitute irreparable harm as it would be an irreversible and non-compensable violation of their Fourth Amendment rights;

(ii) that the Commonwealth would suffer little harm as they could buy and inspect samples of the Hills' cheese pursuant to Virginia Code § 3.1–417 or obtain a warrant to search the Hills' property;

(iii) that the Hills have a strong likelihood of success on the merits as the right of privacy is "at its zenith" within the home; and

(iv) that continued production of the Hills' goat cheese is in the public interest as there is no evidence that the Hills have ever sold adulterated, spoiled, or otherwise unsafe cheese.

On September 17, 2004, defendant filed a motion to dismiss, arguing (i) that *Younger v. Harris*[11] requires abstention and dismissal to avoid federal interference with pending state court litigation, and (ii) that searches of the Hills' goat cheese operations do not run afoul of the Constitution because the Fourth Amendment authorizes warrantless searches of pervasively regulated industries and food is such a perva-

---

**10.** 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). *Burger* recognized an exception to the warrant requirement for searches of pervasively or closely regulated industries. *See id.* at 699, 107 S.Ct. 2636.

**11.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

sively regulated industry. *See Traverso v. Penn*, 874 F.2d 209, 212 (4th Cir.1989) ("*Younger v. Harris* ... and its progeny require abstention where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action."); *Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (upholding warrantless inspections of pervasively regulated businesses as reasonable when (1) a substantial government interest informs the regulatory scheme, (2) warrantless inspections are necessary to further that scheme, and (3) the inspection program provides an adequate substitute for a warrant). In response, the Hills argue:

> (i) that *Younger* abstention is not warranted because the statute challenged here, § 3.1–399, is different from the statute challenged in state court, namely § 3.1–388(e);
>
> (ii) that *Younger* abstention is unwarranted because this case presents extraordinary circumstances sufficient to warrant federal intervention;
>
> (iii) that the exception to the warrant requirement for searches of pervasively regulated industries does not apply to a home; and
>
> (iv) that farm-produced goat cheese does not constitute a pervasively regulated industry.

*See Younger*, 401 U.S. at 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (leaving room for federal intervention in the event of "extraordinary circumstances").

The Hills' application for a preliminary injunction was construed as a motion for a temporary restraining order pursuant to Rule 65(b), Fed.R.Civ.P., and a hearing was held on September 30, 2004. Because defendant's counsel represented that no inspections of plaintiff's facilities were currently contemplated, the record did not support a finding of immediate irreparable harm and, accordingly, a temporary restraining order did not issue. Nonetheless, because it was clear that defendant did anticipate an inspection in the foreseeable future, the merits were accelerated and consolidated, pursuant to Rule 65(a)(2), Fed.R.Civ.P., with the hearing on the Hills' application for a preliminary injunction and defendant's motion to dismiss. Thereafter, the parties submitted a joint statement of stipulated facts and memoranda of law on the issues presented. A bench trial followed.

## II.

Despite the Hills' deeply-felt conviction that VDACS's warrantless inspections of their home goat cheese making operation violate their Fourth Amendment rights and the government's equally earnest concern to protect public health and safety through inspections of these operations, the merits of this dispute cannot be reached without first addressing and deciding the abstention issue.

 In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, the Supreme Court has repeatedly affirmed the "strong federal policy against federal court interference with pending state judicial proceedings ...." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (citing *Younger*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669). *Younger* itself held that "federal courts may not enjoin a pending criminal prosecution, absent a clear showing that 'defense of the prosecution will not assure adequate vindication of constitutional rights.'" *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir.1989) (quoting *Younger*, 401 U.S. at 48–49, 91 S.Ct. 746). Underlying *Younger*, is the vitally important rule of comity,

inspired by principles of federalism,[12] that directs federal courts to abstain from deciding constitutional challenges to state action "however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.' " *Cinema Blue,* 887 F.2d at 53 (quoting *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 299, 237–38, 104 S.Ct. 1586, 80 L.Ed.2d 120 (1984)). Thus, when a federal court is presented with a constitutional issue already before a state court, the respect accorded state processes "precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex,* 457 U.S. at 431, 102 S.Ct. 2515. Accordingly, "federal court equitable interference with state criminal proceedings should not be undertaken except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster,* 75 F.3d 881, 903 (4th Cir.1996). In those narrow circumstances, "federal courts may intervene in state criminal proceedings," but "only when there has been a 'showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief.' " *Id.* (citing *Younger,* 401 U.S. at 54, 91 S.Ct. 746).

■ These principles, applied here, mandate abstention to avoid decision on constitutional issues already before the Virginia state courts, a competent forum for the resolution of such issues and where the Hills may, and already have, raised their constitutional defense. Had the Hills

sought to enjoin the pending criminal proceedings against them, *Younger* would squarely apply. *See Younger,* 401 U.S. at 45, 91 S.Ct. 746 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). But this is not quite the case here. Instead, the Hills seek (i) a declaration that warrantless inspections of their goat cheese operation are unconstitutional and (ii) an injunction, not against their pending criminal prosecutions, but against future § 3.1–399 inspections. Yet, even if *Younger* itself does not squarely fit, its underlying principle of comity still controls, for to grant either form of the requested relief would necessarily require reaching and deciding the very constitutional issue now before the state court. And where, as here, a constitutional issue must be decided as a prerequisite to issuing the requested relief, and that issue is already presented in ongoing state judicial proceedings, the principle of comity usually requires federal court abstention.[13]

This result finds firm support in the cases that have extended *Younger* 's principles to actions for declaratory judgment and damages. On the same day it issued *Younger,* the Supreme Court issued *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), holding there that federal courts should usually abstain from issuing declaratory relief that would invalidate a state statute underlying a pending

---

12. The notion of comity "includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.' " *Middlesex,* 457 U.S. at 431, 102 S.Ct. 2515 (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. 746).

13. *See Traverso v. Penn,* 874 F.2d 209, 212 (4th Cir.1989) (*"Younger v. Harris* ... and its progeny require abstention where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action."); *see also Cinema Blue,* 887 F.2d at 53.

criminal prosecution. *See id.* at 72–73, 91 S.Ct. 764 (1971). The Supreme Court extended *Younger* abstention beyond injunctions to cover declaratory judgments as well, because "the practical effect of the two forms of relief will be virtually identical, and the basic policy against federal interference with pending state criminal prosecutions [would] be frustrated as much by a declaratory judgment as it would be by an injunction." *Id.* at 73, 91 S.Ct. 764. This is so because the declaratory relief might serve as a basis for a subsequent injunction,[14] and because the federal declaratory judgment would arguably be entitled to res judicata effect in the state criminal trial. *Id.* at 72, 91 S.Ct. 764 (citing *Public Serv. Com'n v. Wycoff Co.,* 344 U.S. 237, 247, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). Thus, a declaration that a state criminal law is unconstitutional has the potential to undermine a state prosecution based on that statute to the same extent as a direct injunction of the prosecution.

■ The same rationale counseling abstention has been applied to actions for damages, which also may require adjudication of predicate constitutional issues

raised in a pending state judicial proceeding.[15] As in an action for declaratory relief, a judgment reaching and deciding predicate constitutional issues in a federal damages action could, in turn, arguably be invoked for its preclusive effect in the state court.[16] Thus, it follows that whether a plaintiff seeks injunctive, declaratory, or monetary relief, abstention is appropriate if the relief the plaintiff seeks would require, as a prerequisite, a ruling on constitutional questions at issue in the pending state proceeding.[17]

Because abstention should not be lightly invoked, it is worth examining specifically how the Hills' requests for declaratory and injunctive relief have the potential for interfering with the Commonwealth's ongoing prosecution of the Hills. First, the Hills here seek a declaratory judgment that Virginia Code § 3.1–399, which authorizes warrantless searches of locations where food is manufactured or stored, is unconstitutional as applied to a private home where goat cheese is produced. Obviously, were the Hills to prevail here and searches of their farm pursuant to § 3.1–399 ruled unconstitutional, such a decision would bear directly on the state court's

14. *See id;* 28 U.S.C. § 2002 ("A court of the United States may not grant an injunction to stay proceedings in a State court except ... to protect or effectuate its judgments.").

15. Although the Supreme Court has never explicitly decided whether the *Younger* abstention rule applies to actions for damages, most circuits, including the Fourth Circuit, have recognized that *Younger* principles apply "in some fashion" to actions at law. *See Deakins v. Monaghan,* 484 U.S. 193, 208 & n. 3, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (White, J., concurring); *Gilbertson v. Albright,* 381 F.3d 965, 978 n. 13 (9th Cir.2004) (collecting cases); *Traverso,* 874 F.2d at 213 (finding abstention appropriate when claim sought money damages as well as declaratory and injunctive relief). *But see Alexander v. Ieyoub,* 62 F.3d 709, 713 (5th Cir.1995) ("We

have previously observed that the Younger abstention doctrine does not apply to a suit seeking only damages.").

16. *Deakins,* 484 U.S. at 208, 108 S.Ct. 523 (White, J., concurring) (concluding that abstention may be warranted in an action for damages because "[a] judgment in the federal damages action may decide several questions at issue in the state criminal proceeding" and these decisions "presumably would be owed res judicata effect").

17. The Fourth Circuit's summary of the *Younger* abstention principle is consistent with this result. *See Traverso,* 874 F.2d at 212 (abstention required "where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action.").

pending decision on the substantially identical question, namely whether § 3.1–388(e) violates the Fourth Amendment by imposing a criminal penalty on citizens who refuse to submit to a search authorized by § 3.1–399. Put simply, if a federal court declares warrantless searches of the Hills' farm under § 3.1–399 unconstitutional, then the law criminalizing the Hills' refusal to allow the search, § 3.1–388(e), would itself be unconstitutional as applied to them. Thus, issuing a declaratory judgment that a warrantless search of the Hills' goat cheese operation is unconstitutional would plainly interfere with the state court criminal proceeding to the same extent as would an injunction barring the Hills' prosecution for refusing that search. It follows, therefore, that abstention is warranted with respect to the Hills' request for declarative relief.

The Hills' request for an injunction to enjoin all future inspections of their farm calls for the same result, as such an injunction has essentially the same potential to interfere with the state court proceedings. Before such an injunction could issue, it would still be necessary to decide the constitutional issue that is at the heart of the state prosecution. And even if such a ruling had no preclusive effect on the state court proceedings, it still would constitute "the sort of practical interference with an ongoing state criminal proceeding that *Younger* counsels against." *Cinema Blue*, 887 F.2d at 53; *see also Colonial First Props., LLC v. Henrico County*, 166 F.Supp.2d 1070, 1079 (E.D.Va.2001) (applying "prism of pragmatism" to conclude that practical effect of injunction against future enforcement of public nudity ordinance would be to "interfere significantly" with pending state court prosecutions under same law). Indeed, counsel for the Hills conceded at trial that were the Hills to succeed in federal court on such a claim, he would seek to use the favorable federal

judgment to persuade the state court to adopt similar reasoning. In sum, because the Hills have an adequate opportunity to raise their constitutional claim in state court, abstention is necessary to honor the principles of comity articulated in *Younger*.

The Hills' arguments against abstention are unpersuasive. First, they argue that the law challenged here, namely § 3.1–399, is different from the law challenged in state court, namely § 3.1–388(e), and that a ruling could be issued on the first without influencing the pending prosecution for the violation of the second. This argument fails because the two statutes are integrally related; one authorizes the inspections and the other punishes refusal to allow the authorized inspections. So, it seems clear that a constitutional defense to a § 3.1–388(e) prosecution of the Hills necessarily entails a consideration of the constitutionality of § 3.1–399 as it applies to the Hills. Yet, the Hills do not give up easily on this point. Finely parsing these statutes, they argue that if the state court strikes down only § 3.1–388(e), they would have vindicated their right to refuse warrantless inspections, if present, but inspectors could still rely on § 3.1–399 to enter onto their property to conduct a search when the Hills were not present or to request an inspection by consent. This fine parsing is unconvincing, for the Hills have made clear that they are adamant in their stand on principle and will not consent. And, any entry in their absence by defendant or his representative would constitute at least a trespass, if not a constitutional tort. Moreover, even if a state court could invalidate the Hills' prosecution without addressing the constitutionality of the search, the argument does not work in the reverse; if a federal court were to rule the search unconstitutional, this ruling would necessarily impact the constitutionality of

the Hills' prosecution for refusing to permit the search. Thus, the distinction between the statutes does not neutralize the comity concerns articulated in *Younger*.

◼ Nor does this case, as the Hills argue, fall within the "narrow and extraordinary circumstances" where federal courts may intervene in state criminal cases upon a "'showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief.'" *Gilliam*, 75 F.3d at 903; *see also Kugler v. Helfant*, 421 U.S. 117, 123, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). In support, the Hills argue that abstention during the pendency of their state court appeal may result in subjecting them to "repeat prosecutions" under § 3.1–388(e) if, during that time, state agents attempt other inspections and the Hills again withhold their consent. Even if plausible, this speculative scenario does not amount to the "narrow and extraordinary circumstances" that would warrant federal interference with a state proceeding. While it is true that the Supreme Court stated in *Younger* that a state prosecution "brought in bad faith" or as "only one of a series of repeated prosecutions" might warrant federal intervention,[18] this reference was directed not toward the risk that a person might re-offend and thus be prosecuted a second time, but toward "harassment" that might result from bad faith repetitive prosecutions. *See id.* at 50, 91 S.Ct. 746 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)). The Hills have not alleged nor have they adduced any evidence of such a bad faith attempt to harass.

◼ It is clear that the Hills have resisted prosecution in state court and have brought this suit in federal court as a matter of principle—they believe that warrantless searches of their home, whether they are producing goat cheese there or not, go to the heart of their rights guaranteed in the Fourth Amendment to the Constitution. Yet, whether or not the Hills are correct in this regard, it is a fundamental principle of our federal system that, absent some showing of bad faith, harassment, or other extraordinary circumstances, state courts are entrusted to adjudicate constitutional matters and that a state forum will not be presumed to be inadequate to safeguard constitutional rights. Thus, although the Hills may believe passionately that the state courts have come, and will yet come, to the wrong conclusion regarding their constitutional claim, their appropriate remedy is to assert and pursue their claim as a defense in the state court prosecution and then, if necessary, to appeal to the United States Supreme Court. In the meantime, consistent with the deference and restraint counseled by *Younger* and its progeny, the defendant's motion to dismiss must be granted and, accordingly, the matter must be dismissed.[19]

An appropriate Order will issue.

---

18. *Younger*, 401 U.S. at 49, 91 S.Ct. 746.

19. Because the Hills do not bring any claim for damages, there is no risk that their claims will be barred by the statute of limitations if re-filed after the completion of the state proceedings, and thus, the matter is accordingly dismissed rather than stayed pending the outcome of the state prosecution. *See Traverso*, 874 F.2d at 213 (holding that § 1983 suit seeking money damages in addition to injunctive and declarative relief should be stayed

rather than dismissed to guard against statute of limitations problems).